IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Terrie T. Myers, | ) | C/A No. 0:12-422-JFA-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Robbie Wood, Marilyn Law, Trent Elmore, Jonnie Woods, Janice Dabney, Nathan Crabdree, Doug Arbour, Kelly Crook, and Spring Memorial Hospital, | ) | |
| Defendants. | ) | |

The plaintiff, Terrie T. Myers ("Myers"), a self-represented litigant, filed this action alleging discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.; and a wage claim against the named defendants.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment.  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Myers of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendants' motion. (ECF No. 60.) Myers filed a response in opposition (ECF No. 64) and the defendants' replied (ECF No. 70).

---

[1] The individual defendants are entitled to summary judgment for the additional reason that neither Title VII nor the ADEA provide for individual liability under the circumstances of this case. See Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180 (4th Cir. 1998); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 n.1 (4th Cir. 1994).



Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

**BACKGROUND**

The following facts are viewed in the light most favorable to Myers, to the extent they find support in the record. Myers, an African American female over the age of forty, worked for Defendant Springs Memorial Hospital ("Springs") for over ten years until her termination in January 2011. Most recently, she served as the Admissions Clerk during the second shift. During the relevant time, Myers was the only African American assigned to that shift. Due to the scarcity of staff on this shift, Myers often did not get to take a lunch break and had an undesirable work schedule.

During 2010, Myers twice availed herself of leave pursuant to the Family Medical Leave Act. The parties agree that Myers submitted a physician's certification that Myers would be fit to return to duty on December 15, 2010. Myers in fact returned to work the following day.

During her ten years at Springs, Myers was disciplined numerous times for a variety of infractions. For example, in her first thirteen months of employment, she was written up for excessive tardiness, using profanity, and overdosing a patient. Myers apparently maintained a good record after that until 2009, when Sara Stokes, an African American female over the age of forty, became her supervisor. Between February 2009 and June 2010 when Stokes left Springs, Stokes disciplined Myers once for violation of safety rules; once for tardiness; and three times for substandard work.

After Stokes's departure Myers continued to accrue disciplinary infractions. Defendant Crook wrote up Myers for excessive tardiness or absences (sixteen occasions). Defendant Law



disciplined Myers, as well as a white employee working the shift, for failing timely to register patients. Defendant Wood disciplined Myers three times: two of these infractions stemmed from Myers's alleged failure to register patients timely or properly, the other was for unprofessional conduct and leaving her shift without permission. The latter infraction was subsequently voided by Defendant Arbour, Springs's Chief Executive Officer.[2]

Defendant Law disciplined Myers for an infraction in the fall of 2010. Myers filed a grievance contesting the infraction, during the course of which she reported a comment allegedly attributed to Law and repeated to Myers by a co-worker, Mandy Kennington. According to Myers, Kennington stated to her that Law commented that there were going to be some changes and five "colored" girls were going to be fired, and that Myers was one of them. Myers met with Defendants Elmore and Crabdree about the alleged comment. During the course of the meeting, Elmore asked Myers whether she would prefer to be referred to as "colored" or "African American" and Crabdree laughed. Elmore also informed Myers that an investigation had not substantiated that Law made the comment and that Kennington denied hearing Law make the comment or telling Myers about it.

In mid-December 2010 Myers complained to Defendant Arbour about the stress of working the Admitting Clerk position in the second shift and he offered to transfer her to another position as soon as he could. Shortly after that meeting, Defendant Wood received a complaint from a patient about Myers of poor customer service and rudeness. The patient further stated that as a result of her interaction with Myers, she regretted choosing Springs for her procedure. Springs then terminated

---

[2] Notably, Myers's annual evaluation score in 2009 was below average, scored at 2.36 out of 5.0. Her 2010 evaluation similarly rated her performance as below average at a score of 2.14.



Myers's employment, citing the patient complaint as well as six previous disciplinary notices involving substandard work, lack of team work, and excessive tardiness and absences.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory"). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Direct Evidence and Burden-Shifting Framework**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may establish through direct or circumstantial proof that a protected characteristic such as gender was a motivating factor in the employer's adverse decision. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).



Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Myers's Claims**

   **1.     Age Discrimination**

The defendants correctly point out that Myers has failed to establish the requisite elements for a claim of age discrimination. Myers appears to have abandoned this claim, as she has not refuted Springs's showing regarding this claim in any way or addressed it in her memorandum in opposition to the defendants' motion. The court therefore concludes that the defendants are entitled to summary judgment regarding this claim.

   **2.     Title VII Claims**

Myers's claim of race discrimination similarly flounders. Any attempt to rely on the statements of Law and Elmore as direct evidence of racial animus fails as a matter of law. With



regard to the statement she attributes to Law, Myers has presented no admissible evidence that Law ever made it.  The law does not permit a plaintiff to rely on hearsay to defeat a properly supported summary judgment motion.  See Maryland Highways Contractors Ass'n v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

Moreover, Elmore's question to Myers, even if such could be considered as evidence of racial animus, is an isolated remark unrelated to the challenged employment practice.  Courts in this circuit have widely recognized that stray comments cannot alone constitute evidence of discrimination.  See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (Title VII) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal quotation marks and alterations omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  In this circuit, the general use of racial epithets is treated differently than the single use of a slur.  See Brown v. Dir. of S.C. Dep't Corr., C/A No. 8:08-3761-HFF-BHH, 2010 WL 3167331, at *5 (D.S.C. Aug. 5, 2010) (citing Belton v. City of Charlotte, 175 F. App'x 641, 657 (4th Cir. 2006)).  Accordingly, unless connected with the employment decision at issue, an isolated comment cannot constitute evidence of the discriminatory animus necessary to establish a Title VII claim.

Nor can Myers establish a discrimination claim utilizing the McDonnell Douglas framework.  Although courts in this circuit have used, depending on the facts presented, a variety of tests to determine whether a plaintiff has established a *prima facie* case under Title VII, a common element is the requirement that the plaintiff demonstrate satisfactory job performance at the time of the



alleged discrimination. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)) (requiring as the second element for a *prima facie* case of discriminatory discharge that at the time of the adverse action, the plaintiff was performing at a level that met the employer's legitimate expectations); Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002) (requiring as the second element of the *prima facie* test for disciplinary discharge that the plaintiff show that she was qualified for the job and that her job performance was satisfactory). In analyzing this element, courts have recognized that in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

    Myers cannot establish this necessary element on this record. Although she argues that the disciplinary measures taken by Stokes were "unwarranted and should not have been issued," (Pl.'s



Mem. Opp'n Def.'s Mot. Summ. J. at 2, ECF No. 64 at 2), nothing in the record suggests that Stokes, who is African American, did not genuinely believe Myers's performance to be lacking at the time she counseled her or that the criticisms were motivated by Myers's race. See Thornley, 104 F.3d at 30; see also Demesme v. Montgomery Cnty. Gov't, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd *per curiam*, 208 F.3d 208 (4th Cir. 2000); Coggins v. Gov't of District of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Similarly, although Myers denies using profanity as accused, she presents no evidence tending to show that the supervisor who confronted Myers did not believe that she did. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made"). Likewise, her contention that Arbour reversed a "bogus disciplinary warning" imposed by Wood does not demonstrate that *Wood* did not believe that Myers should have been punished for the alleged infraction. Finally, her opinion that many of the disciplinary measures were not her fault but rather were the result of the shift being understaffed, even if true, does not show that the defendants' expectations of her were not genuinely held. See Coco, 128 F.3d at 1179.

Furthermore, to the extent Myers's claim is based on a contention that she was disciplined more severely than white employees who engaged in similar conduct, she has failed to offer any evidence that (1) she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; or (2) the disciplinary measures enforced against her were more

PJG

severe than those enforced against the other person. See Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008).

Finally, even assuming Myers could establish a *prima facie* case of race discrimination or retaliation, she cannot show that the University's proffered reason for her termination was pretextual. She presents no evidence to support her speculation that the customer complaint was fabricated; she cannot show on the record before the court that the customer complaint against her was a pretext for unlawful discrimination or retaliation.

### 3.     Family Medical Leave Act

To establish a *prima facie* case that her employer interfered with FMLA rights, a plaintiff must show: (1) that she was an eligible employee; (2) that her employer was covered under the FMLA; (3) that she was entitled to FMLA leave; (4) that she gave her employer adequate notice of her intention to take leave; and (5) that her employer denied her benefits to which she was entitled. See Rodriguez v. Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008) (citing Edgar v. JAC Prod., Inc., 443 F.3d 501, 507 (6th Cir. 2006)); see generally 29 U.S.C. § 2615(a)(1).

Myers's FMLA claim fails because she cannot show on the matters properly before the court that Springs interfered with her FMLA rights. Myers's FMLA claim rests on the date she returned to work—December 16, 2010—following FMLA leave, as she seems to contend that Springs required her to return to work before she was able. Myers testified in her deposition, however, that she submitted a "Certification of Fitness for Duty" form signed by a physician, which permitted her to return to work on December 15, 2010. (Myers Dep. 61:7-10, ECF No. 59-3 at 62; Ex. 12 at 3, ECF No. 59-4 at 115.) Although she now attaches to her response to Springs's summary judgment motion a different note indicating that she was excused by her physician until December 19, 2010



(see ECF No. 64-1 at 2), Springs points out that Myers never produced the second note in discovery and, in fact, never produced it to Springs at all.  In any event, it conflicts with her deposition testimony.  Accordingly, the new note, even if it were properly before the court, cannot defeat a properly supported summary judgment motion by creating a conflict with her sworn testimony.  See Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").  Because the matters properly before the court unequivocally demonstrate that Springs complied with Myers's physician's instructions about when she could return to work, her FMLA interference claim fails as a matter of law.  See Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 958-9 (8th Cir. 2012).

    4.    **Wage Claim**

Springs has also demonstrated that it is entitled to summary judgment regarding any claim by Myers for unpaid wages for working through lunch breaks.  In her deposition, Myers testified that she worked through lunch thirty-four times.  (Myers Dep. Ex. 7, ECF No. 59-4 at 30-36; Myers Dep. 29:16-34:7, ECF No. 59-3 at 30-35.)  Based on its business records, Springs verified that Myers worked through lunch without pay for ten days, then tendered Myers her wages accordingly.  Thus, Springs argues, Myers's wage claim is moot.  In her response, Myers does not dispute that Springs has since paid her for those days; rather, she argues that the payment is insufficient because she worked at least ninety lunch breaks without pay.  However, she provides no admissible evidence to support this assertion, and the court therefore concludes that she has not forecast evidence sufficient to survive summary judgment on this claim.



**RECOMMENDATION**

Myers's claims all fail as a matter of law.[3]  The court therefore recommends that the defendants' motion for summary judgment be granted in its entirety.  (ECF No. 59.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 24, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3] To the extent that Myers's Complaint is construed as raising a claim under 42 U.S.C. § 1981, such a claim rises or falls with her Title VII claim, and therefore fails as well.  See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the McDonnell Douglas burden-shifting framework, developed for Title VII, has been applied to § 1981 claims).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).